705 So.2d 560 (1997)
MERRILL CROSSINGS ASSOCIATES, etc., Petitioner,
v.
Lawrence Howard McDONALD, et al., Respondents.
WAL-MART STORES, INC., etc., Petitioner,
v.
Lawrence Howard McDONALD, et al., Respondents.
Nos. 88324, 88776.
Supreme Court of Florida.
December 4, 1997.
Rehearing Denied February 11, 1998.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, Noah H. Jenerette, Jr. of Boyd & Jenerette, P.A., Jacksonville, and Jeffrey P. Gill of Bridgers, Gill & Holman, Pensacola, for Petitioners.
Jeffery B. Morris of Morris and Bernard, Jacksonville, and Daniel A. Smith, Jacksonville, for Respondents.
HARDING, Justice.
We have for review a decision certifying the following questions to be of great public importance:
IS AN ACTION ALLEGING THE NEGLIGENCE OF THE DEFENDANTS IN FAILING TO EMPLOY REASONABLE SECURITY MEASURES, WITH SAID OMISSION RESULTING IN AN INTENTIONAL, CRIMINAL ACT BEING PERPETRATED UPON THE PLAINTIFF BY A NON-PARTY ON PROPERTY CONTROLLED BY THE DEFENDANTS, AN "ACTION BASED UPON AN INTENTIONAL TORT" PURSUANT TO SECTION 768.81(4)(B), FLORIDA STATUTES (1993), SO THAT THE DOCTRINE *561 OF JOINT AND SEVERAL LIABILITY APPLIES?
IN SUCH AN ACTION, IS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO EXCLUDE AN INTENTIONAL, CRIMINAL NON-PARTY TORTFEASOR FROM THE VERDICT FORM?
Wal-Mart Stores, Inc. v. McDonald, 676 So.2d 12, 22-23 (Fla. 1st DCA 1996). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the first question in the affirmative and the second question in the negative, as explained herein.
McDonald was shot and injured by an unknown assailant on July 30, 1993, in the parking lot of a Jacksonville Wal-Mart store. He brought a personal injury suit against Wal-Mart and Merrill Crossings (the owner and developer of the shopping center) alleging failure to maintain reasonable security measures. The jury ruled in McDonald's favor, finding Wal-Mart seventy-five percent negligent and Merrill Crossings twenty-five percent negligent. Merrill Crossings recovered a judgment on its cross-claim for indemnity against Wal-Mart plus attorney's fees and costs. Wal-Mart appealed.
The First District Court of Appeal concentrated on the issue of whether the trial court erred in failing to include the assailant on the verdict form. The court looked to section 768.81, Florida Statutes (1993), and Slawson v. Fast Food Enterprises, 671 So.2d 255 (Fla. 4th DCA 1996), review dismissed, 679 So.2d 773 (Fla.1996), and ultimately concluded that excluding the assailant from the verdict form was not error.
Section 768.81 codifies "Comparative Fault"; it provides in relevant part:
(2) EFFECT OF CONTRIBUTORY FAULT.In an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.
(3) APPORTIONMENT OF DAMAGES.In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
(4) APPLICABILITY.
(a) This section applies to negligence cases. For purposes of this section, "negligence cases" includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort or breach of warranty and like theories. In determining whether a case falls within the term "negligence cases," the court shall look to the substance of the action and not the conclusory terms used by the parties.
(b) This section does not apply ... to any action based upon an intentional tort....
§ 768.81, Fla. Stat. (1993). The district court noted that joint and several liability had existed at common law. The court held that the statute should not be interpreted to displace the common law any more than is necessary, relying on our decisions in Ady v. American Honda Finance Corp., 675 So.2d 577 (Fla.1996), and Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977), for the principle that statutes in derogation of the common law must be strictly construed.
The court quoted section 768.81(4)(a), which states that the statute applies only to "negligence cases" and not to "any action based upon an intentional tort." Because the statute was to be strictly construed, the court accepted McDonald's contention that the substance of the action arose from his being intentionally shot and therefore was based on an intentional tort. The court noted that it was foreseeable, intentional conduct from which the appellants had a duty to protect McDonald.
The district court distinguished the instant case from our decision in Fabre v. Marin, *562 623 So.2d 1182 (Fla.1993), where we said: "We are convinced that section 768.81 was enacted to replace joint and several liability with a system that requires each party to pay for noneconomic damages only in proportion to the percentage of fault by which that defendant contributed to the accident." Fabre, 623 So.2d at 1185. The district court below wrote:
Although Fabre illustrates the evolution of Florida tort law toward a system that requires each party to pay for non-economic damages only in proportion to its percentage of fault, McDonald argues convincingly that the comparison of negligent acts to criminal, intentional acts was never envisioned as part of that change.
Wal-Mart, 676 So.2d at 20. The court continued:
We think that the factual context from which the holding in Fabre arosean automobile accident involving purely negligent actsis materially different from a criminal design such as was carried out by McDonald's assailant. The shooting of McDonald was an intended result, not a mere accident. Therefore, we conclude that Fabre and its progeny neither addressed nor disposed of the issue presented in this appeal. Furthermore, McDonald's interpretation of the statute is consistent with the proposition that negligent acts are fundamentally different from intentional acts.
Wal-Mart, 676 So.2d at 20. The court examined cases from other jurisdictions which supported this position and noted that "Dean Prosser echoed these conclusions, stating that intentional wrongdoing differs from simple negligence `not merely in degree but in the kind of fault ... and in the social condemnation attached to it.' Prosser and Keeton on the Law of Torts, § 65, at 462 (5th ed.1984)." Wal-Mart, 676 So.2d at 21. The court concluded that excluding the criminal assailant from the verdict form was not error because section 768.81 does not apply to the instant action, but certified the questions at issue.
We agree with the district court that our decision in Fabre does not dispose of the factual situation at issue here. In Fabre, the plaintiff was an innocent passenger suing for damages resulting from an automobile accident caused by the combined negligence of her husband and the other driver, where the negligence of both drivers caused the harm. Here, the harm was a directly foreseeable result of Wal-Mart and Merrill Crossing's negligence. In Fabre we dealt with two negligent tortfeasors whose negligence combined to produce the harm; in the instant case we deal with a negligent tortfeasor whose acts or omissions give rise to or permit an intentional tortfeasor's actions.
We also agree with the district court that the language excluding actions "based on an intentional tort" from the statute gives effect to a public policy that negligent tortfeasors such as in the instant case should not be permitted to reduce their liability by shifting it to another tortfeasor whose intentional criminal conduct was a foreseeable result of their negligence. See, e.g., Hall v. Billy Jack's, Inc, 458 So.2d 760 (Fla.1984) (lounge proprietor owes its patrons the duty to protect them from reasonably foreseeable harm); Holley v. Mt. Zion Terrace Apts., Inc., 382 So.2d 98 (Fla. 3d DCA 1980) (the deliberate act of the rapist and murderer did not constitute an independent intervening cause which would insulate the landlord from liability for failing to provide reasonable security measures); see also Paterson v. Deeb, 472 So.2d 1210 (Fla. 1st DCA 1985); Whelan v. Dacoma Enterprises, Inc., 394 So.2d 506 (Fla. 5th DCA 1981); Rosier v. Gainesville Inns Associates, Ltd., 347 So.2d 1100 (Fla. 1st DCA 1977) (a landlord's breach of an implied duty to provide locks and maintain common areas in safe condition may render landlord liable to the tenant for injuries resulting from unauthorized entry and criminal acts within the premises). The Restatement (Second) of Torts states, "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." Restatement (Second) of Torts, § 449 (1965). Thus, it would be irrational to allow a party who negligently fails to provide *563 reasonable security measures to reduce its liability because there is an intervening intentional tort, where the intervening intentional tort is exactly what the security measures are supposed to protect against.
Section 768.81(4)(a) explicitly states, "In determining whether a case falls within the term `negligence cases,' [such that comparative fault would be required] the court shall look to the substance of the action and not the conclusory terms used by the parties." The Slawson court, in holding that section 768.81 did not apply to that case, reasoned:
Hence looking "to the substance of the action and not the conclusory terms used by the parties," we conclude that the substance of this action was an intentional tort, not merely negligence. In limiting apportionment to negligence cases, the legislature expressly excluded actions "based upon an intentional tort." [emphasis supplied] The drafters did not say including an intentional tort; or alleging an intentional tort; or against parties charged with an intentional tort. The words chosen, "based upon an intentional tort," imply to us the necessity to inquire whether the entire action against or involving multiple parties is founded or constructed on an intentional tort. In other words, the issue is whether an action comprehending one or more negligent torts actually has at its core an intentional tort by someone.
Slawson, 671 So.2d at 258. The substance of the action here is that McDonald was the victim of an intentional tort; we are not faced with the kind of true negligence action we examined in Fabre. Accordingly, we agree with the reasoning of the Slawson court as to this issue and hold that section 768.81, by its own terms, does not apply to the instant case to mandate comparative fault.
Because we hold that section 768.81 is not applicable to the instant case, it was not error to exclude the intentional tortfeasor from the verdict form. Accordingly, we answer the first certified question in the affirmative and the second question in the negative, as explained herein, and we approve the decision of the First District Court of Appeal.[1]
It is so ordered.
KOGAN, C.J., OVERTON, SHAW and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] We decline to address the other two issues raised by the parties and answer only the certified questions.