CLARK, J.
R.J. Reynolds Tobacco Company (“RJR”) appeals the amended final judgment for plaintiff Dr. Robert Sury, the personal representative of the estate of William Sury. We affirm the amended final judgment in all respects, but write to address the issue of apportionment of the damage award in light of the multiple causes of action, the jury verdict, and the applicability of section 786.81, Florida Statutes.
In November, 2007, Appellee, Dr. Robert Sury, along with several other plaintiffs, commenced a lawsuit against RJR and Lorillard Tobacco Co. by filing the initial complaint in Bowman v. R.J. Reynolds Tobacco Co., Case No.2007 CA 011175 (4th Cir. Duval County). Although the elder Mr. Sury died in 1997, Dr. Sury and the other plaintiffs brought their suit as authorized by Engle v. Liggett Group, Inc., 945 So.2d 1246, 1274 (Fla.2006).[1]
Dr. Sury proceeded to trial on his Third Amended Complaint (Complaint), seeking damages for the wrongful death of his father due to lung cancer resulting from Mr. Sury’s addiction to cigarettes containing nicotine. The Complaint included counts for: strict liability; negligence; fraud and fraudulent concealment; civil conspiracy; breach of express and implied warranties; successor liability; and punitive damages. In the Complaint, Dr. Sury acknowledged that his father shared some fault for his smoking-related injuries and he therefore sought “potential apportion *851 ment of fault and damages on all counts other than those alleging intentional torts.”
After the lengthy trial, the jury returned a verdict for plaintiff Dr. Robert Sury. The jury specifically found that both RJR and Lorillard were negligent and strictly liable for placing the defective product (cigarettes) on the market. Considering the intentional torts of fraudulent concealment and civil conspiracy to fraudulently conceal, the jury made particular findings that both companies’ fraudulent acts were the legal cause of Mr. Sury’s death. The jury assigned contributory fault, finding the decedent Mr. Sury 60% at fault, RJR 20% at fault, and Lorillard Tobacco 20% at fault. The jury determined that plaintiff Robert Sury suffered $1 million in damages for the loss of his father. The jury declined to award any punitive damages.
The issue of apportionment of the damage award was raised by the parties when they submitted their respective proposed final judgments and presented argument to the court. The plaintiff urged the court to award the entire $1 million against the defendants jointly and severally because the jury found liability on both the negligent tort counts and the intentional tort counts. The defendants countered that the plaintiff had waived any objection to apportionment of the award because Plaintiff acknowledged throughout the trial that his father shared some fault for his choice to smoke cigarettes and failure to overcome his addiction. In addition to waiver, the defendants argued that this case was essentially a products liability claim and that section 768.81, Florida Statutes, required reduction of the award according to the contributory fault found by the jury.
After hearing argument on the motion, the trial court discussed its reasoning and the opinion in Mazzilli v. Doud, 485 So.2d 477 (Fla. 3d DCA 1986), and concluded that section 768.81, Florida Statutes, did not require apportionment of damages for intentional torts, such as fraudulent concealment and civil conspiracy to fraudulently conceal in this case. The trial court also rejected the defendants’ waiver argument. In its Amended Final Judgment, the trial court awarded Dr. Sury the full $1 million, against RJR and Lorillard Tobacco Co. “jointly and severally.”
The trial court properly rejected the defendants’ claim that Dr. Sury waived the award of unreduced damages. While acknowledging the decedent’s partial responsibility for his injuries and death resulting from his smoking behavior and failure to overcome his eventual addiction to cigarettes containing nicotine, the plaintiffs Complaint clearly and specifically sought “potential apportionment of fault and damages on all counts other than those alleging intentional torts.” Dr. Sury never argued to the jury or the court that the damages for his father’s terminal illness should be reduced by his portion of fault. The defendants were on notice from the date of the Complaint that Dr. Sury alleged intentional torts as well as negligent torts. Further, the defendants agreed to the verdict form which listed each cause of action, including the intentional torts, and requested the jury to indicate whether the defendants had committed each individual tort or not.
As recognized in Smith v. R.J. Reynolds Tobacco Co., No. 3:09-cv-10048 (M.D.Fla. May 2, 2013), the respective roles of the jury and of the court are separate and distinct. The jury was properly tasked with determining RJR’s liability or lack thereof, and if liable, the particular legal theory or theories under which it determined liability. The jury was properly requested to determine a total damage amount. The jury was not, and need not have been, instructed about the legal consequences attached to the classification of each tort in terms of the damages award *852 ed. The application of the law to the facts found by the jury, including any apportionment of the actual award, was properly left to the court. There was no inkling that the jury failed to follow the jury instructions or otherwise deliberated improperly.
Applying the law to the facts found by the jury, the trial court properly ruled that section 768.81, Florida Statutes, did not require reduction of the damages awarded in this case, where the jury found the defendants liable under both negligent and intentional tort theories. Section 768.81(2), Florida Statutes provides:
In a negligence action, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant’s contributory fault, but does not bar recovery.
The statute allows for some discretion in the determination of whether an action is “a negligence action,” because section 768.81(l)(c) defines “negligence action” as:
[A] civil action for damages based upon a theory of negligence, strict liability, products liability, ... or breach of warranty and like theories. The substance of an action, not conclusory terms used by a party, determines whether an action is a negligence action.
The question in this case is whether section 768.81 requires reduction of the damages awarded when the action includes multiple causes of action, both negligent torts, as listed in the statute, and intentional torts such as fraudulent concealment and civil conspiracy to fraudulently conceal.
Rule 1.110(g), Florida Rules of Civil Procedure allows pleading multiple and alternative causes of action. Appellants argue that the combination of the negligent tort counts and the intentional tort counts does not change the substance of this action, which Appellants argue is a negligence/strict liability action. However, we find no abuse of discretion in the trial court’s determination that although the plaintiff pled negligence and strict liability, the additional allegations of the intentional torts and the proof of affirmative, calculated misrepresentations in the tobacco companies’ advertising and other publications supported the conclusion that this action “actually had at its core an intentional tort by someone.” Merrill Crossings Assocs. v. McDonald, 705 So.2d 560, 563 (Fla.1997) (section 768.81 did not apply to case where allegations of multiple negligent torts stemmed from intentional acts). The trial court properly relied on Mazzilli v. Doud, 485 So.2d 477 (Fla. 3d DCA 1986) because that jury, like the jury in this case, found the defendants liable for both negligence and intentional torts. In Mazzilli, the Third District Court did not reduce the plaintiffs damage award by the percentage of the plaintiffs liability due to the jury’s verdict on the intentional tort count.
Applying the reasoning in Maz-zilli v. Doud, and considering the plaintiffs consistent pleading and assertion that he agreed to “apportionment of fault and damages on all counts other than those alleging intentional torts,” and considering the defendants’ agreement to the verdict form at trial, we find no abuse of the trial court’s discretion in concluding that section 768.81, Florida Statutes, did not require reduction of the damage award by the percentage of fault found by the jury attributable to the plaintiffs decedent. As explained in Merrill Crossings Assocs. v. McDonald, 705 So.2d 560, 562 (Fla.1997), the public policy behind the exclusion in section 768.81 for intentional torts is that intentional wrongs “differ from simple negligence ‘not merely in degree but in the kind of fault ... and in the social condemnation attached to it.’ ” In addition, the contributory fault provision, like the rest *853 of section 768.81, is in derogation of the common law and therefore “must be strictly construed in favor of the common law” and “should not be interpreted to displace the common law any more than is necessary.” Wal-Mart Stores, Inc. v. McDonald, 676 So.2d 12 (Fla. 1st DCA 1996); see also Merrill Crossings Assocs. v. McDonald, 705 So.2d 560 (Fla.1997). The intentional torts pled, argued, and proved to the jury in this case remove it from the dictates of section 768.81(2).
The trial court’s amended final judgment is AFFIRMED.
MARSTILLER, J., and BOLES, W. JOEL, ASSOCIATE JUDGE, concur.

. In Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), the Florida Supreme Court specified a limited window of time for the filing of individual lawsuits by persons fitting a certain class description as an exception to the ordinary statute of limitations. In addition, Engle provided these plaintiffs the benefit of res judicata on several findings of fact common to the members’ claims {"Engle Phase I findings”—see Engle v. Liggett Group, Inc., 945 So.2d at 1254 n. 4).